# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF WASHINGTON
# AT SEATTLE

| | |
|---|---|
| OLYMPIC AIR, INC. and CATLIN INSURANCE COMPANY, INC.<br><br>Plaintiffs,<br><br>v.<br><br>HELICOPTER TECHNOLOGY COMPANY, et al.,<br><br>Defendants. | Case No. 2:17-CV-1257-RSL<br><br>ORDER GRANTING DEFENDANT MD HELICOPTER, INC.'S MOTION TO DISMISS AMENDED CONSOLIDATED COMPLAINT |
| WILLIAM G. REED and MARY E. REED,<br><br>Plaintiffs,<br><br>v.<br><br>HELICOPTER TECHNOLOGY COMPANY, et al.<br><br>Defendants. | |

This matter comes before the Court on defendant MD Helicopter, Inc.'s ("MDHI") motion to dismiss plaintiffs' First Amended Consolidated Complaint. Dkt. #47.

## **BACKGROUND**

On July 22, 2014, plaintiff William G. Reed was piloting an MDHI Model (originally a "Hughes Model") 369D helicopter ("the Helicopter"), Registration No. N5225C, near Oso, Washington in the scope of his employment with Olympic Air, Inc. Dkt. #47 at ¶¶ 4.1, 5.1. The

Helicopter has five rotor blades. Id. at ¶ 4.1. Plaintiffs allege that one of the blades, Part No. 500P2100-105, Serial No. SN091B, failed and caused a crash. Id. at ¶¶ 4.1–4.2. The blade was manufactured by defendant Helicopter Technology Company ("HTC") and sold by defendant HTC in October 2012 as one of a set of five blades to Olympic Air. Id. at ¶¶ 3.1, 4.1. Post-crash inspection revealed that the blade had disbanded at the root fitting, and that a second blade was in the process of failing at the time that it fractured. Id. at ¶ 4.2; see Ex. B, Dkt. #48 at 10–19. The pilot had carried out inspections prior to the flight but had looked primarily at the root fitting and the metal. The need to inspect the bond line for cracks was not clear to him until after the accident, when new service advisories were issued to that effect. Ex. B, Dkt. #48 at 19.

Defendant MDHI is a corporation organized and existing under the laws of the State of Arizona, with its principal place of business in Mesa, Arizona. Id. at ¶ 3.2. Plaintiffs brought action against MDHI pursuant to the common law of negligence and the Washington Product Liability Act, see RCW 7.72.010 *et seq*. Their claims are based on HTC's reliance on the rotor blade designs promulgated by MDHI and MDHI's creation and distribution of service instructions, bulletins and other advisories that failed to provide adequate warning to users of signs of imminent failure of the rotor blades.[1] Dkt. #45 at ¶ 8.4. MDHI filed a motion to dismiss under Federal Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction. Dkt. #47.

## DISCUSSION

**A. Legal Standard**

Plaintiffs must prove that the Court has personal jurisdiction over MDHI. Harris Rutsky & Co. Ins. Servs. v. Bell & Clements Ltd., 328 F.3d 1122, 1128–29 (9th Cir. 2003) (citing Doe,

---

[1] Plaintiffs also state that the main rotor blades for the Helicopter were manufactured by HTC, "supplied and sold directly to [MDHI] by [HTC], and subsequently sold by MDHI as MDHI produced parts." Dkt. #45 at ¶ 8.4. As per counsel for Olympic Air's clarification at oral argument on May 22, 2019, the Court assumes this to be a reference to MDHI's status as the Type Certificate Holder and legal manufacturer of the Helicopter. Id. at ¶ 8.3, see Dkt. #54; see Dkt. #31 (Cousins Decl.) at ¶¶ 17–18 ("Olympic [Air] … reassembled the aircraft using MDHI manufactured parts, as well as main rotor blades manufactured and sold by [HTC]."). HTC manufactured the rotor blade.

ORDER GRANTING DEFENDANT HELICOPTER, INC.'S MOTION
TO DISMISS AMENDED CONSOLIDATED COMPLAINT - 2

I v. Unocal Corp., 248 F.3d 915, 922 (9th Cir. 2001) (per curiam)). Where there is no applicable federal statute governing personal jurisdiction, the district court applies the law of the state in which the district court sits. Schwarzenegger v. Fred Martin Motor Co., 374 F.3d 797, 800 (9th Cir. 2004) (citing Fed. R. Civ. P. 4(k)(1)(A)). As Washington's long-arm statute is co-extensive with the outer limits of due process, the Court need only ensure that the constitutional requirements for personal jurisdiction are met. Cognigen Networks, Inc. v. Cognigen Corp., 174 F. Supp. 2d 1134, 1137 (W.D. Wash. 2001) (citing Chan v. Society Expeditions, Inc., 39 F.3d 1398, 1404–05 (9th Cir. 1994)).

Due process requires that MDHI have "certain minimum contacts with [the forum] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" Int'l Shoe Co. v. State of Wash., Office of Unemployment Comp. & Placement, 326 U.S. 310, 316 (1945) (quoting Milliken v. Meyer, 311 U.S. 457, 463 (1940)). Plaintiffs contend that MDHI is subject to this Court's specific personal jurisdiction. Dkt. #45 at ¶¶ 6.1–6.3. The Ninth Circuit employs a three-part test to determine whether there is specific personal jurisdiction. First, the non-resident defendant must purposefully direct its activities or consummate some transaction with the forum or a resident of the forum, or perform some act by which it purposefully avails itself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws. Second, the claim must be one that arises out of or relates to the defendant's forum-related activities. Third, the exercise of jurisdiction must comport with fair play and substantial justice; i.e., it must be reasonable. Picot v. Weston, 780 F.3d 1206, 1211 (9th Cir. 2015) (citing Schwarzenegger, 374 F.3d at 802). As this is a claim sounding in tort, we apply a "purposeful direction" test and look to evidence that MDHI directed its activities at the State of Washington, even if those actions took place elsewhere. Id. (citing Schwarzenegger, 374 F.3d at 802–03).

Plaintiffs have the burden of proving the first two prongs. Id. (citing CollegeSource, Inc. v. AcademyOne, Inc., 653 F.3d 1066, 1076 (9th Cir. 2011)). If they do so, the burden shifts to

MDHI to set forth a compelling case that the exercise of jurisdiction would not be reasonable. Id. at 1212 (citing CollegeSource, 653 F.3d at 1076).

### B. MDHI's Minimum Contacts with the State of Washington

Plaintiffs argue that MDHI purposefully directed its activities at the State of Washington in several ways, and that their claims arise out of these forum-related activities. The Court considers each rationale in turn.

#### 1. Legal Manufacturer of the Helicopter

MDHI's legal predecessor, Hughes Helicopters, manufactured the Helicopter in 1979. Dkt. #45 at ¶ 6.3; Dkt. #12 (Black Decl.) at ¶ 9. Hughes Helicopters was sold to McDonald Douglas in 1984. McDonald Douglas merged with Boeing in 1997. In 1999, the civilian line of Hughes Helicopters was sold to MD Helicopters Holdings, Inc. In 2005, Patriarch Partners, LLC purchased the civilian Hughes product line and recapitalized the company as MDHI. Dkt. #50 at 5–6; Dkt. #32 (Kovarik Decl.) at ¶ 4. Plaintiffs allege that MDHI and its predecessor companies have had a business relationship with Olympic Air since 1980. Dkt. #24 at ¶ 6.3; Dkt. #31 at ¶ 6.

MDHI is the Type Certificate Holder for the 369D aircraft. Id. at ¶ 3; Dkt. #45 at ¶ 6.3. As the Type Certificate Holder, MDHI is required to publish safety bulletins and produce manuals. It also has the right to produce and sell the product line covered by the Type Certificate. Dkt. #47 at 6. It is required to warn owners and operators of any safety issues, to maintain the airworthiness of its products, and to investigate and notify the Federal Aviation Authority ("FAA") of any issue involving flight safety. Dkt. #32 at ¶ 19. Plaintiffs argue that MDHI is therefore legally deemed to be the manufacturer of the helicopter. It has successor liability for the product line and the actions of its predecessor corporations are imputed to it for the purposes of jurisdiction. Dkt. #45 at ¶ 6.3.

MDHI argues that being a Type Certificate Holder is "geographically agnostic" and "jurisdictionally irrelevant." Dkt. #47 at 7. That status cannot create a substantial connection between a non-resident company and a state because a Type Certificate Holder cannot issue a

ORDER GRANTING DEFENDANT HELICOPTER, INC.'S MOTION
TO DISMISS AMENDED CONSOLIDATED COMPLAINT - 4

service bulletin to certain operators to the exclusion of others. Id. MDHI also points out that aviation-related defendants who are Type Certificate Holders have prevailed on motions to dismiss for lack of personal jurisdiction. See for e.g. Katz v. Spiniello Companies, 244 F. Supp. 3d 237, 256 (D. Mass. 2017).

The Court agrees. Plaintiffs cite to cases that establish that a Type Certificate Holder can be considered a manufacturer under the General Aviation Revitalization Act of 1994, but these do not have implications for the question of personal jurisdiction. See Burton v. Twin Commander Aircraft LLC, 171 Wn. 2d 204 (2011). MDHI was formed in 2005 when Patriarch Partners purchased the Hughes 369D product line from RDM Holdings, Inc. Dkt. #50 at 5. "Washington follows the general rule that 'a corporation purchasing the assets of another corporation does not become liable for the debts and liabilities of the selling corporation.'" Columbia State Bank v. lnvicta Law Grp. PLLC, 199 Wn. App. 306, 319 (2017) (quoting Cambridge Townhomes, LLC v. Pac. Star Roofing, Inc., 166 Wn.2d 475, 481–82 (2009)). Furthermore, to establish personal jurisdiction, plaintiffs' claim must arise out of or relate to MDHI's forum-related activities. Picot, 780 F.3d at 1211 (citing Schwarzenegger, 374 F.3d at 802). Plaintiffs' cause of action arises out of an alleged defect in one of the main rotor blades of the helicopter, manufactured by HTC and sold to Olympic Air in October 2012. Dkt. #45 at ¶ 4.1. Plaintiffs' allegations concerning the manufacture of the Helicopter by MDHI's predecessors are irrelevant. Plaintiffs' stream of commerce argument is similarly inapplicable. Dkt. #50 at 3, 16, 23; see J. McIntyre Mach., Ltd. v. Nicastro, 564 U.S. 873 (2011).

2. Design of Rotor Blades for Helicopter

Plaintiffs argue that HTC manufactures the blades for the Model 369D and 500 helicopters with MDHI's approval and pursuant to an MDHI design. Dkt. #45 at ¶ 6.3. MDHI refutes this, stating that the design and manufacture of the original Hughes 369D in 1979 cannot be a source of liability "both because MDHI is the wrong party (the party would be Boeing) and also because of the General Aviation Revitalization Act of 1994's 18-year statute of repose." Dkt. #47 at 8–9; see Lyon v. Agusta S.P.A., 252 F.3d 1078, 1084 (9th Cir. 2001), as amended

ORDER GRANTING DEFENDANT HELICOPTER, INC.'S MOTION
TO DISMISS AMENDED CONSOLIDATED COMPLAINT - 5

(July 9, 2001). The Court agrees. Furthermore, plaintiffs do not show a connection between any designs made by MDHI and the State of Washington. Picot, 780 F.3d at 1211. This cannot be a basis for personal jurisdiction.

### 3. Processing of Warranty Claims

Plaintiffs argue that MDHI processes warranty claims for customers in Washington, either directly or through their distributors and service centers. Dkt. #45 at ¶ 6.3. A tab on MDHI's website indicates that warranty claims can be processed through MDHI's service centers. Dkt. #32 at ¶ 6; see Ex. H, Dkt. #32-1 at 41–43. However, plaintiffs' claim does not arise out of MDHI's processing of any warranty claims. Picot, 780 F.3d at 1211 (9th Cir. 2015) (citing Schwarzenegger, 374 F.3d at 802).

### 4. Selling of Products and Replacement Parts in Washington

Plaintiffs argue that MDHI has purposefully availed itself of the privilege of doing business in the State of Washington by selling products and replacement parts in the forum, directly and through distributors. Dkt. #45 at ¶ 6.3. At the time of the accident, MDHI maintained two authorized dealers and service centers in the State of Washington, Cascade Airframe Repair, Inc. (now Cascade Helicopter Services) and Northwest Helicopters. Dkt. #32 at ¶ 8. Out of 684 Model 369D helicopters worldwide, 26 are listed as being based in Washington; i.e., just under 5%. Id. at ¶ 5. Plaintiffs also specifically allege that Olympic Air has purchased a substantial number of MDHI factory parts since 1980. Id. Between 2002 and 2013, while operating three MDHI helicopters, Olympic Air purchased approximately $400,000 worth of MDHI-manufactured parts annually. Dkt. #31 at ¶ 8. These were predominantly purchased from Heli-Mart, Inc., a factory authorized distributor of MDHI parts located in California. Id.; see Dkt. #50 at 9–10. Olympic Air purchased the airframe of the Helicopter from Cascade Airframe and rebuilt it using MDHI factory parts in 2002. Dkt. #48 (Bingham Decl.) at ¶ 8. It has used Cascade Airframe's services since 1982. Dkt. #31 at ¶ 16.

However, plaintiffs have conceded that the rotor blade of the Helicopter was manufactured by HTC and sold by HTC to Olympic Air in October 2012. Dkt. #45 at ¶ 4.1. Their claim does not arise out of MDHI's sale of products and replacement parts in the State of Washington. Nor does it pertain to the airframe sold to Olympic Air by Cascade Airframe, even assuming specific personal jurisdiction might be established over MDHI based upon the actions of Cascade Airframe as its "agent." See Dkt. #47 at 8; see Williams v. Yamaha Motor Co., 851 F.3d 1015, 1024 (9th Cir. 2017) (finding that the appellants failed to make out a prima facie case for an agency relationship, assuming that "some standard of agency continues to be relevant to the exercise of *specific* jurisdiction") (quoting Daimler AG v. Bauman, 571 U.S. 117, 135 n.13 (2014)) These allegations are irrelevant to whether the Court has specific personal jurisdiction over MDHI. Picot, 780 F.3d at 1211 (citing Schwarzenegger, 374 F.3d at 802).

### 5. Selling of Manuals and Service Bulletins to Olympic

Plaintiffs allege that MDHI issued "instructions, guidelines, warnings, cautions and service information concerning the use of the subject model helicopter, and component parts thereof, including the subject main rotor blade." Dkt. #45 at ¶ 8.2. They argue that Olympic Air has since 1980 maintained, serviced, inspected and operated its MDHI helicopters pursuant to the manuals and service bulletins sold directly by MDHI or its predecessors. Dkt. #31 at ¶ 7. The Helicopter itself has been serviced in Washington since at least 1988. Dkt. #48 at ¶ 8. The manuals were always sent by MDHI to Olympic Air in Shelton, Washington. Id. When MDHI became the owner of the Hughes Helicopter product line and its Type Certificate Holder, Olympic Air purchased a multi-volume printed set of MDHI manuals from MDHI for approximately $800 to $900. These volumes were periodically updated and reissued by MDHI at a supplemental charge to Olympic Air. Id. at ¶ 9; see Ex. A, Dkt. #31-1 at 1–5. About 6 or 7 years ago, MDHI replaced its printed maintenance manuals with manuals on MDHI's website.[2]

---

[2] Apart from the availability of manuals and service bulletins online, plaintiffs argue that the MDHI's interactive website subjects it to personal jurisdiction in Washington. Dkt. #45 at ¶ 6.3; Dkt. #50 at 19–20; see Cybersell, Inc. v. Cybersell, Inc., 130 F.3d 414, 418 (9th Cir. 1997). For example, the website advertises two service centers located in Washington, Cascade Helicopter Services and

ORDER GRANTING DEFENDANT HELICOPTER, INC.'S MOTION
TO DISMISS AMENDED CONSOLIDATED COMPLAINT - 7

Access was restricted to those customers, like Olympic Air, who were able to show ownership of an MDHI helicopter since July 31, 2017. Id. at ¶¶ 10–11; Dkt. #50 at 10. Olympic Air paid an annual fee for this access, but also continues to use the printed volumes. Id.; Dkt. #50 at 10. These provide "guidelines, instructions, cautions, service, maintenance and inspection procedures for the MDHI 369D helicopter in general, and more specifically for the subject model rotor blade that failed, causing the crash at issue in the subject litigation." Id. Olympic Air relied on the manuals for servicing the Helicopter's rotor blades. Id. at ¶ 12.

MDHI also sold a Service Bulletin Package to Olympic Air that contained a complete set of all Service Bulletins issued through February 5, 2010. Id. at ¶ 13. Olympic Air regularly referred to this package while servicing and maintaining the Helicopter, including the allegedly defective rotor blade. Id.; see Ex. B, Dkt. #31-1 at 6–8. The service letters and service bulletins were routinely mailed by MDHI to Olympic Air. After the accident, MDHI mailed Olympic Air a letter supplementing previously published main rotor blade inspection procedures with illustrative photographs. Id. at ¶ 14; see Ex. C, Dkt. #31-1 at 9–13. Furthermore, every six months, an MDHI service technician contacted Olympic Air to verify that Olympic Air still owned and operated the MDHI helicopters and to inquire about their hours of operation and their serial numbers. Id. at ¶ 15.

MDHI argues that plaintiff William Reed has conceded that he did not rely on the manuals issued by MDHI and did not comply with the Service Bulletins. Dkt. #47 at 10; see Ex. B, Dkt. #48 at 16. Whether the materials were actually consulted is not relevant to whether the fact that MDHI sold and sent them to Olympic Air in Washington is sufficient to confer personal

---

Northwest Helicopters. Dkt. #32 at ¶ 8; see Ex. C, Dkt. #32-1 at 22–25; Ex. J, Dkt. #32-1 at 50–51. It directs prospective customers to use a "Contact Form" to contact service centers. The Form includes a "State" fillable field that allows customers to fill in "Washington." Id. at ¶¶ 9, 15; see Ex. A, Dkt. #32-1 at 10. Customers can also register accounts for managing all aspects of owning and operating an MDHI helicopter. Id. at ¶ 12. However, plaintiffs' claims vis-à-vis MDHI arise out of MDHI's manuals and service bulletins. They do not concern the functionality of the website or any actions taken by MDHI's service centers.

ORDER GRANTING DEFENDANT HELICOPTER, INC.'S MOTION
TO DISMISS AMENDED CONSOLIDATED COMPLAINT - 8

jurisdiction upon MDHI. However, MDHI also argues that it was obligated as a Type Certificate Holder to make the manuals and instructions available to owners and operators in order to comply with mandatory airworthiness standards. Dkt. #47 at 10; see 14 CFR § 21.50(b). This would have been true irrespective of where Olympic Air was located. Id. It reiterates that it is unaware of any case in which a court has exercised personal jurisdiction on the basis of the non-resident defendant being a Type Certificate Holder. Id. at 10–11.

MDHI cites to the Tenth Circuit's decision in Old Republic Ins. Co. v. Cont'l Motors, Inc. In Old Republic, an airplane manufactured by an out-of-state defendant, Continental Motors, Inc., crashed in Idaho on a flight from Colorado. The airplane's insurer filed an action against Continental Motors in Colorado, alleging that its online service manuals and bulletins contained defective information that caused the crash. Those manuals and bulletins were accessed and consulted by Colorado-based Arapahoe Aero, a fixed-based operator ("FBO"), in servicing the airplane. 877 F.3d 895, 900 (10th Cir. 2017). The district court dismissed the case for lack of personal jurisdiction. The Tenth Circuit affirmed. It held that Old Republic did not allege that Continental Motors "specifically sought out Arapahoe Aero's business or engaged in any direct communications with it." Id. at 912. FAA regulations required that it make its service manuals available to certified repair stations and FBOs wherever they were located. Id. at 917. Nothing about its webpage or its service manuals appeared to be deliberately targeted at Colorado, in terms of content or its intended audience. Id. MDHI argues that it, too, was merely complying with its obligations as a Type Certificate Holder. Dkt. #47 at 11–12.

The Court agrees. MDHI did not "purposefully avail[] itself of the privilege of conducting activities in the forum" or direct its activities at the State of Washington. Picot, 780 F.3d at 1211. It sent manuals and service bulletins to Washington because Olympic Air was in Washington. As defense counsel pointed out at oral argument, had Olympic Air been located elsewhere, the materials would have been sent elsewhere. "The inquiry whether a forum State may assert specific jurisdiction over a nonresident defendant focuses on the relationship among the defendant, the forum, and the litigation." Walden v. Fiore, 571 U.S. 277, 283–84 (2014)

ORDER GRANTING DEFENDANT HELICOPTER, INC.'S MOTION
TO DISMISS AMENDED CONSOLIDATED COMPLAINT - 9

(quoting <u>Keeton v. Hustler Magazine, Inc.</u>, 465 U.S. 770, 775 (1984)). "The relationship must arise out of contacts that the 'defendant *himself*' creates with the forum State." <u>Id.</u> (quoting <u>Burger King Corp. v. Rudzewicz</u>, 471 U.S. 462, 475 (1985)) (emphasis in original). The Court must reject "attempts to satisfy the defendant-focused 'minimum contacts' inquiry by demonstrating contacts between the plaintiff (or third parties) and the forum State." <u>Id.</u> (citing <u>Helicopteros Nacionales de Colombia, S.A. v. Hall</u>, 466 U.S. 408, 417 (1984)). Furthermore, the analysis looks to the "defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there." <u>Id.</u> (citing <u>Int'l Shoe Co.</u>, 326 U.S. at 319).

MDHI's only contact with Washington is that it sent materials to Olympic Air in Washington that it was federally required to send to all operators of its aircraft. The "plaintiff cannot be the only link between the defendant and the forum. Rather, it is the defendant's conduct that must form the necessary connection with the forum State that is the basis for its jurisdiction over him." <u>Walden</u>, 571 U.S. at 285–86 (citing <u>Burger King</u>, 471 U.S. at 478). The Court cannot "rely on a defendant's 'random, fortuitous, or attenuated contacts' or on the 'unilateral activity' of a plaintiff." <u>Id.</u> (citing <u>Burger King</u>, 471 U.S. at 475).

Plaintiff has not proven the first two prongs of specific personal jurisdiction. <u>Picot</u>, 780 F.3d at 1211. The Court need not reach the question of whether the exercise of jurisdiction would be reasonable. <u>See</u> <u>Menken v. Emm</u>, 503 F.3d 1050, 1058 (9th Cir. 2007) (citing <u>CE Distribution, LLC v. New Sensor Corp.</u>, 380 F.3d 1107, 1112 (9th Cir. 2004)).

## **CONCLUSION**

For all the foregoing reasons, MDHI's motion to dismiss is GRANTED.

DATED this 29th day of May, 2019.

*Robert S. Lasnik* (signature)
Robert S. Lasnik
United States District Judge