1
2
3
4
5
6
7
8

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

9
10

OLYMPIC AIR, INC.; CATLIN
INSURANCE COMPANY, INC.,

Case No. C17-1257RSL

11

Plaintiffs,

ORDER

12

v.

13
14

HELICOPTER TECHNOLOGY COMPANY,
et al.,

15

Defendants.

16

WILLIAM G. REED and MARY E. REED,

17

Plaintiffs,

18

v.

19
20

HELICOPTER TECHNOLOGY COMPANY,
et al.,

21

Defendants.

22
23

        This matter comes before the Court on (1) the Helicopter Technology Company

24

defendants' ("HTC") "Motion to Dismiss" (Dkt. #60), (2) plaintiffs' "Joint Motion for Leave to

25

File Second Amended Consolidated Complaint" (Dkt. #69), (3) plaintiffs' "Second Joint Motion

26

for Leave to File Second Amended Complaint" (Dkt. #101), (4) plaintiffs' "Motion to Compel

27

Defendant Helicopter Technology Company to Answer Interrogatories and Produce

28

Documents" (Dkt. #65), (5) plaintiffs' two pro forma motions for LCR 5(g) review of

documents designated confidential by HTC (Dkts. #81, #90), and (6) HTC's "Motion to Strike

ORDER - 1

1  Declaration of Elvis Cepus" (Dkt. #110).  Having considered the motions and the remainder of
2  the record,[1] the Court finds as follows:

3  ## I.   BACKGROUND

4  On July 22, 2014, plaintiff William G. Reed was piloting an MDHI Model 369D
5  helicopter, Registration No. N5225C ("the Helicopter"), near Oso, Washington in the scope of
6  his employment with plaintiff Olympic Air, Inc.  Dkt. #45 (First Am. Compl. ("FAC")) at
7  ¶¶ 4.1, 5.1.  Plaintiffs allege that one of the Helicopter's five rotor blades, Part No. 500P2100-
8  105, Serial No. SN091B ("subject main rotor blade"), failed and caused a crash.  Id. at ¶¶ 4.1-
9  4.2.  The subject main rotor blade was manufactured by defendant HTC and sold by HTC to
10  Olympic Air in October 2012 as one of a set of five blades.  Id. at ¶¶ 3.1, 4.1.  Post-crash
11  inspection revealed that the blade had disbonded at the root fitting, and that a second blade was
12  in the process of failing at the time that it fractured.  Id. at ¶ 4.2.  Plaintiffs allege that the subject
13  main rotor blade failed due to a manufacturing and/or design defect, and HTC's failure to warn.
14  Id. at ¶¶ 7.4-7.5.

15  This case was filed in King County Superior Court on July 19, 2017.  See Dkt. #1-1.  On
16  August 18, 2017, defendants removed the action to federal court based on diversity jurisdiction.
17  Dkt. #1; 28 U.S.C. § 1332.  On May 8, 2018, plaintiffs filed their First Amended Consolidated
18  Complaint.  See FAC.  Plaintiffs assert claims against HTC for violations of the Washington
19  Product Liability Act ("WPLA") under theories of strict liability, negligence, breach of express
20  or implied warranty, failure to warn, failure to properly instruct as to use, misrepresentation,
21  concealment, nondisclosure, and negligent and/or defective design, assembly and manufacture.
22  Id. at ¶¶ 7.1-7.8.[2]

23  ## II.   HTC'S MOTION TO DISMISS (Dkt. #60)

24  HTC has moved to dismiss plaintiffs' claims pursuant to Federal Rule of Civil Procedure
25  ("Rule") 12(c) (see Dkt. #60), which permits a party to move for judgment on the pleadings.

26

27  [1] The Court finds this matter suitable for disposition without oral argument.

28  [2] The Court granted defendant MD Helicopters Inc.'s ("MDHI") motion to dismiss for lack of
personal jurisdiction on May 29, 2019.  Dkt. #55.

1    Fed. R. Civ. P. 12(c).  When, as here, a motion under Rule 12(c) is used to raise the defense of

2    failure to state a claim, the Court's review is the same as it would have been had the motion

3    been filed under Rule 12(b)(6).  See, e.g., McGlinchy v. Shell Chem. Co., 845 F.2d 802, 810

4    (9th Cir. 1988).  To survive a motion to dismiss under Rule 12(b)(6), plaintiffs' complaint must

5    "state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544,

6    570 (2007).  A claim is facially plausible "when the plaintiff pleads factual content that allows

7    the Court to draw the reasonable inference that the defendant is liable for the misconduct

8    alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  The Court presumes all well-pleaded

9    allegations to be true and draws reasonable inferences in favor of the non-moving party.  See,

10   e.g., In re Fitness Holdings Int'l, Inc., 714 F.3d 1141, 1144-45 (9th Cir. 2013).  The facts must

11   allow the Court "to infer more than the mere possibility of misconduct[.]" Iqbal, 556 U.S. at

12   679.  "Threadbare recitals of the elements of the cause of action, supported by mere conclusory

13   statements, do not suffice." Id. at 678.  If a plaintiff's complaint fails to state a cognizable legal

14   theory or fails to provide sufficient facts to support a claim, dismissal is appropriate.  See, e.g.,

15   Taylor v. Yee, 780 F.3d 928, 935 (9th Cir. 2015).

16        HTC argues that plaintiffs have failed to plead sufficient facts to support their WPLA

17   claims.  See Dkt. #60 at 2-6.  "[T]he WPLA creates a single cause of action for product-related

18   harms that supplants previously existing common law remedies." Wash. Water Power Co. v.

19   Graybar Elec. Co., 112 Wn.2d 847, 860 (1989).  The WPLA subjects a product manufacturer "to

20   liability to a claimant if the claimant's harm was proximately caused by the negligence of the

21   manufacturer in that the product was not reasonably safe as designed or not reasonably safe

22   because adequate warnings or instructions were not provided."  RCW 7.72.030(1).  Further, a

23   product manufacturer is "subject to strict liability to a claimant if the claimant's harm was

24   proximately caused by the fact that the product was not reasonably safe in construction or not

25   reasonably safe because it did not conform to the manufacturer's express warranty or to the

26   implied warranties under Title 62A RCW."  RCW 7.72.030(2).  "Thus, to state a claim under the

27   WPLA, a plaintiff must plead non-conclusory allegations that plausibly support (1) a defective

28   design claim; (2) a failure to warn claim; (3) a defective manufacture claim; or (4) a breach of

1  express or implied warranty claim." <u>Staub v. Zimmer, Inc.</u>, No. C17-0508JLR, 2017 WL
2  2506166, at *2 (W.D. Wash. June 9, 2017) (citations omitted).  However, a plaintiff is not
3  required to commit to a specific theory of liability before conducting discovery.  <u>Braden v.</u>
4  <u>Tornier, Inc.</u>, No. C09-5529RJB, 2009 WL 3188075, at *3 (W.D. Wash. Sept. 30, 2009).
5  "Requiring plaintiffs to plead facts in support of a specific theory under the WPLA would 'shut
6  the courthouse doors before plaintiffs had an opportunity to meaningfully engage in the
7  process.'" <u>Frisvold v. Pentair Filtration Sols. LLC</u>, C17-136RSL, 2017 WL 3236972, at *2
8  (W.D. Wash. July 31, 2017) (quoting <u>Braden</u>, 2009 WL 31880785, at *3)).

9      The Court finds plaintiffs have adequately pled their causes of action under the WPLA in
10  accordance with the pleading standards set forth in Rule 8. Fed. R. Civ. P. 8.  HTC's arguments
11  to the contrary are generally not well taken.  Plaintiffs assert that HTC failed to adequately warn
12  users, that it designed, manufactured, and sold the failed rotor blade to plaintiff Olympic Air,
13  FAC at ¶¶ 4.1-4.2, 7.3, that the blade's failure was due to the blade disbonding at the roof
14  fitting, <u>id.</u> at ¶ 4.2, and that that blade's disbonding led to the subsequent Helicopter accident, <u>id.</u>
15  at ¶¶ 4.1-4.2, 5.1.  The Court finds "[t]his factual allegation describing *how* the product failed
16  satisfies the pleading standard for claims under the WPLA[.]" <u>Frisvold</u>, 2017 WL 3236972, at
17  *2  (emphasis in original) (citing <u>Braden</u>, 2009 WL 3188075, at *3; <u>Force v. Wright Med. Tech.</u>,
18  No. 3:12-cv-5687-RBL, 2012 WL 4897165, at *2 (W.D. Wash. Oct. 15, 2012)).[3]  HTC's motion
19  to dismiss (Dkt. #60) is DENIED.

20      **III.    PLAINTIFFS' MOTIONS FOR LEAVE TO AMEND (Dkts. #69, #101)**

21      In response to HTC's motion to dismiss, plaintiffs moved the Court for leave to amend
22  their complaint to add additional factual allegations. Dkt. #69.  Plaintiffs' proposed
23  amendments add details as to HTC's alleged failure to warn, how the subject main rotor blade

24

25      [3] In its reply brief, HTC implies that plaintiffs must plead facts specifically establishing a design
defect claim through the risk-utility test or consumer expectation test.  <u>See</u> Dkt. #80 at 2-4.  HTC relies
26  heavily on <u>Staub</u>, 2017 WL 2506166, at *2, which it argues compels dismissal. This Court is not bound
by the decisions of its colleagues in the Western District of Washington, and finds the facts in above-
27  captioned matter more similar to <u>Frisvold</u> than to <u>Staub</u>. HTC's arguments contravene this Court's
reasoning in <u>Frisvold</u>, and finding plaintiffs have alleged more than bare legal conclusions, the Court
28  denies HTC's motion to dismiss. <u>See generally</u> <u>Frisvold</u>, 2017 WL 3236972, at *2.

ORDER - 4

failed by disbondment, and historical context regarding defendants' rotor blades.  Id.; Dkt. #70
(Ex. A) at ¶¶ 7.1-7.25.  HTC opposed plaintiffs' first motion to amend on the ground that
amendment would be futile.  See Dkt. #88.  In reply, plaintiffs filed a "revised" second amended
consolidated complaint ("SAC") to assert *additional* factual allegations against HTC.  Dkts. #91,
#93 (Ex. A) at ¶¶ 7.1-7.58.  Because HTC did not have an opportunity to respond to the
"revised" version of the SAC, plaintiffs proceeded to file a second motion for leave to amend
their complaint.  See Dkt. #101.  HTC also opposes plaintiffs' second motion for leave to amend
on futility grounds.  Dkt. #105.  For the sake of simplicity, the Court will consider plaintiffs'
two motions to amend together.

Courts "should freely give leave [to amend] when justice so requires."  Fed. R. Civ. P.
15(a)(2).  There is a "strong policy in favor of allowing amendment," Kaplan v. Rose, 49 F.3d
1363, 1370 (9th Cir. 1994), and "[c]ourts may decline to grant leave to amend only if there is
strong evidence of undue delay, bad faith or dilatory motive on the part of the movant, repeated
failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing
party by virtue of allowance of the amendment, or futility of amendment, etc."  Sonoma Cty.
Ass'n of Retired Employees v. Sonoma Cty., 708 F.3d 1109, 1117 (9th Cir. 2013) (alterations,
internal quotation marks, and citations omitted).  The underlying purpose of Rule 15 is "to
facilitate decision on the merits, rather than on the pleadings or technicalities."  Lopez v. Smith,
203 F.3d 1122, 1127 (9th Cir. 2000) (citation omitted).

With these considerations in mind, the Court will permit plaintiffs to amend their
complaint to include additional factual allegations against HTC.  See Fed. R. Civ. P. 15.  HTC's
motion papers reiterate its sole argument against amendment—that any proposed amendment to
plaintiffs' complaint would be futile because plaintiffs fail to state a claim for relief under the
WPLA.  See Dkts. #88, #105.  The Court has already rejected this argument in finding that
plaintiffs have adequately pled a WPLA claim under Rule 8's pleading standards.  Fed. R. Civ.
P. 8; see also, Frisvold, 2017 WL 3236972, at *2.  The Court accordingly rejects HTC's
reiterated arguments and declines to find that plaintiffs' proposed amendments would be futile.
The Court additionally finds no evidence of undue delay or bad faith on plaintiffs' part, nor any

1   suggestion that plaintiffs' proposed amendment will unduly prejudice HTC.  See, e.g., Sonoma

2   Cty., 708 F.3d at 1117.

3        For these reasons, plaintiffs' motions for leave to amend their complaint (Dkts. #69.

4   #101) are GRANTED.  The Court will accept plaintiffs' revised SAC for filing as the operative

5   complaint in this case.  See Dkt. #93 (Ex. A).[4]

6   **IV.   PLAINTIFFS' MOTION TO COMPEL DISCOVERY (Dkt. #65)**

7        Plaintiffs have also moved to compel HTC's responses to interrogatories and requests for

8   production.  See Dkt. #65.[5]

9        The Court has "broad discretion to manage discovery."  Avila v. Willits Envtl.

10  Remediation Tr., 633 F.3d 828, 833 (9th Cir. 2011).  In general, "[p]arties may obtain discovery

11  regarding any nonprivileged matter that is relevant to any party's claim or defense and

12  proportional to the needs of the case[.]"  Fed. R. Civ. P. 26(b)(1).  If a party fails to answer an

13  interrogatory or produce documents, the "party seeking discovery may move for an order

14  compelling an answer[.]"  Fed. R. Civ. P. 37(a)(3)(B).  "The party who resists discovery has the

15  burden to show what discovery should not be allowed, and has the burden of clarifying,

16  explaining, and supporting its objections."  Brown v. Warner, No. C09-1546RSM, 2015 WL

17  630926, at *1 (W.D. Wash. Feb. 12, 2015) (quoting Cable & Comp. Tech., Inc. v. Lockheed

18  Sanders, Inc., 175 F.R.D. 646, 650 (C.D. Cal. 1997)).

19

20  ─────────────────

    [4] Plaintiffs shall refile the revised SAC subject to redaction as addressed in greater detail below.

21  [5] Because the Court has denied HTC's motion to dismiss, HTC's request to strike plaintiffs'
22  motion to compel, see Dkt. #75 at 2, is DENIED as moot.  HTC also asks the Court to strike the
    declaration of Alexander Moffat (Dkt. #67), filed with plaintiffs' motion to compel, on the ground that
23  Mr. Moffat "is not qualified to opine on the construction of the subject blades and his opinions are not
    based upon any engineering or technical expertise or any actual facts."  Dkt. #75 at 3, 9-10.  HTC
24  further asserts that Mr. Moffat is unqualified because he is unfamiliar with the MDHI and HTC
    helicopter blades.  Id.  At this stage in the proceedings, the Court disagrees with HTC and declines to
25  strike Mr. Moffat's declaration.  Mr. Moffat has set forth his expertise, which includes a lengthy career
    in accident reconstruction. Dkt. #67 (Moffat Decl.) at ¶¶ 2-3, Ex. 1.  Furthermore, it is perplexing that
26  HTC takes issue with Mr. Moffat's lack of specific knowledge regarding defendants' blades considering
    its refusal to meaningfully respond to plaintiffs' discovery requests, which led to the instant motion to
27  compel.  See id. at ¶ 16 (explaining that HTC's discovery responses do not provide enough facts for Mr.
28  Moffat to fully develop his opinions).  HTC's request to strike the Moffat Declaration is DENIED.

ORDER - 6

1    Plaintiffs have propounded 16 interrogatories and 41 requests for production, seeking

2 discovery in the following categories:

3        • Information and documents relating to the subject model helicopter blade design
4          and approval, and related blade designs;

5        • Information and documents relating to the subject blade manufacture, the subject
          model blade manufacture, and related blade manufacture;
6

7        • Information and documents relating to service difficulties in the field, instructions
           for continued airworthiness, reporting to the Federal Aviation Administration
8          ("FAA") and National Transportation Safety Board ("NTSB"), and testing and
           research concerning failures;
9

10       • Basic information regarding HTC's investigation of the accident at issue including
11         communications with the FAA and NTSB, and information relating to the subject
           helicopter blades; and
12

13       • Information regarding corporate structure, document retention, and business
           relationships.
14

15 See Dkts. #65 at 4-8, #66 (Exs. A, B).

16    HTC refused to respond to the majority of plaintiffs' discovery requests, maintaining

17 blanket objections on the grounds that the requested discovery is irrelevant and/or beyond the

18 scope of discovery permitted by the Federal Rules.  Dkt. #66 (Exs. A, B).[6]  The Court has

19 reviewed each of plaintiffs' interrogatories and requests for production, id., and overrules HTC's

20 objections.  Plaintiffs' discovery requests are narrowly tailored, relevant to plaintiffs' well pled

21 claims, and proportional to the needs of this case.  Fed. R. Civ. P. 26(b)(1).

22    In opposing plaintiffs' motion to compel discovery, the majority of HTC's brief is used to

23 again argue that the requested discovery is irrelevant because plaintiffs have failed to state a

24 claim.[7]  See generally Dkt. #75.  HTC's opposition reads more like a motion for summary

25        [6] For the few requests HTC did answer, most responses are cursory, making it difficult for
26 plaintiffs to assess whether they are fully responsive.  Id.  Plaintiffs have come forward with evidence
   indicating that several of HTC's discovery responses were, in fact, not fully responsive.  See, e.g., Dkts.
27 #82 at 5-8, #83 (Anderson Decl.) at ¶ 10, Ex. F.

28        [7] HTC does not specifically argue in its opposition that the requested discovery is privileged or
   disproportional to the needs of the case.

ORDER - 7

1  judgment than an opposition to a motion to compel discovery.  See id.; Dkts. #76, #77 (Burdorf

2  Decls.).  Meanwhile, plaintiffs have remained unable to conduct permissible discovery in order

3  to refute HTC's assertions.  The Court rejects HTC's premature attempt to litigate the merits of

4  plaintiffs' claims while baselessly preventing plaintiffs from conducting the discovery to which

5  they are entitled.  As described above, the Court has already considered and denied HTC's

6  motion to dismiss for failure to state a claim, and has determined that plaintiffs may proceed on

7  their WPLA claims.  HTC cannot prevent plaintiffs from conducting discovery that is narrowly

8  tailored and relevant to those claims.

9       HTC has not identified any additional valid reasons to withhold the requested discovery

10  in this case,[8] and has not met its burden to show why plaintiffs' requested discovery should not

11  be allowed.  HTC's objections are overruled, and plaintiffs' motion to compel HTC's responses

12  to interrogatories and requests for production (Dkt. #65) is GRANTED.

13  **V.     PLAINTIFFS' MOTIONS FOR LCR 5(g) REVIEW (Dkts. #81, #90)**

14       Plaintiffs have filed two "*Pro Forma* Motion(s) for LCR 5(g) Review of Documents

15  Designated Confidential by Defendant HTC."  (Dkts. #81, #90).  Pursuant to the procedure set

16  forth in LCR 5(g)(3), plaintiffs filed the motions only because HTC had designated the

17  information confidential under the protective order in this case.  See Dkt. #63.  Plaintiffs do not

18  believe the information is confidential, but HTC opposes the motions, requesting that the Court

19  permit all but one exhibit to remain under seal.

20       In their first motion, plaintiffs seek the Court's review of three sealed exhibits—Exhibits

21  C, D, and E to the declaration of James Anderson (Dkt. #83), filed in support of plaintiffs'

22  motion to compel discovery.  See Dkt. #81.  Exhibits C and D contain email communications

23  between HTC and the FAA and NTSB, made in relation to the investigation of the Helicopter

24  accident.  See Dkts. #84 (Ex. C), #85 (Ex. D).  Exhibit E contains a "partial list of some of

25  HTC's customers," including those who identified cracks in their HTC-manufactured helicopter

26  blades.  See Dkt. #86 (Ex. E); see also Dkt. #98 (Burdorf Decl.) at ¶ 8.  In their second motion,

27

28       [8] While HTC posits that some of the requested discovery may contain its trade secrets, there is a
stipulated protective order in place in this case to address this concern.

ORDER - 8

plaintiffs seek the review of sealed Exhibits A and B to the second declaration of James
Anderson (Dkt. #92), filed in support of plaintiffs' joint motion for leave to amend.  See Dkt.
#90.  HTC agrees that Exhibit B should be unsealed, but opposes the unsealing of Exhibit A on
confidentiality grounds.  See Dkt. #100.  Exhibit A is plaintiffs' "revised" SAC (Dkt. #93 (Ex.
A)), which as described above, the Court will permit plaintiffs to file as the operative complaint.
Plaintiffs filed Exhibit A under seal because the version of the complaint references the
materials in sealed Exhibits C, D, and E.

     "There is a strong presumption of public access to the court's files," and, absent a
showing that the public's right of access is outweighed by the interests of the public and/or the
parties in shielding the material from public view, a seal is not appropriate.  See LCR 5(g).  In
this District, parties seeking to seal any documents must provide "a specific statement of the
applicable legal standard and the reasons for keeping a document under seal, including an
explanation of: (i) the legitimate private or public interests that warrant the relief sought; (ii) the
injury that will result if the relief sought is not granted; and (iii) why a less restrictive alternative
to the relief sought is not sufficient."  LCR 5(g)(3).  Previously, courts in the Ninth Circuit
applied a "compelling reasons" standard when determining whether to seal records attached to a
dispositive motion, and a "good cause" standard when determining whether to seal records
attached to a non-dispositive motion.  Kamakana v. City & Cty. of Honolulu, 447 F.3d 1172,
1178 (9th Cir. 2006).  However, the Ninth Circuit now rejects a binary approach, and has
clarified that courts should apply the compelling reasons standard when the sealed documents
are attached to a motion that is "more than tangentially related to the merits of a case."  Ctr. for
Auto Safety v. Chrysler Grp., 809 F.3d 1092, 1098-1101 (9th Cir. 2016).

     The Court finds the "compelling reasons" standard applies to the exhibits under review.
Although Exhibits C, D, and E are attached to plaintiffs' motion to compel, the substance of the
motion to compel pertains to the sufficiency of plaintiffs' complaint and is related to HTC's
motion to dismiss.  Moreover, Exhibit A is plaintiffs' revised SAC, which the Court has
accepted for filing.  The SAC is currently under seal based on its references to Exhibits C, D,
and E, and is plainly "more than tangentially related to the merits" of the case.  Id.  Under the

compelling reasons standard, the party seeking to seal the documents in question bears the burden of showing that "compelling reasons supported by specific factual findings . . . outweigh the general history of access and the public policies favoring disclosure[.]" Kamakana, 447 F.3d at 1178-79 (citations omitted). "In general, 'compelling reasons' sufficient to outweigh the public's interest in disclosure and justify sealing court records exist when such court files might have become a vehicle for improper purposes, such as the use of records to gratify public spite, promote public scandal, circulate libelous statements, or release trade secrets." Id. at 1179 (internal quotation marks and citation omitted).

### a. Exhibits C and D: HTC's Communications with FAA and NTSB

The main concern animating HTC's opposition to unsealing Exhibits C and D appears to be damage to its reputation. It contends that the unsealing of these exhibits "could be incredibly harmful and cause irreparable injury to HTC as a company" by "send[ing] current customers into panic" and "dissuad[ing] future customers and affect[ing] future sales." Dkt. #97 at 3 (citing Dkt. #98 (Burdorf Decl.) at ¶ 4). Concern about reputational damage, without more, is generally not a compelling reason to keep documents under seal. See, e.g., Markel Am. Ins. Co. v. Internet Brands, Inc., No. CV 17-2429 (AJWx), 2017 WL 10433991, at *6 (C.D. Cal. Aug. 2, 2017) (noting that "[t]he mere fact that the production of records may lead to a litigant's embarrassment, incrimination, . . . exposure to further litigation" or "be damaging to its reputation" is generally not a "compelling justification" for keeping documents under seal).

However, HTC also asserts that Exhibits C and D contain "trade secrets as they relate specifically to the design of the blades, the operation of the blades, and the adequacy of the torque event inspection procedures in effect leading up to the Reed/Olympic Air crash." Dkt. #97 at 3 (citing Dkt. #98 (Burdorf Decl.) at ¶ 3). It further argues that it communicated the purported trade secrets to the FAA and NTSB with the understanding that the emails would remain confidential. Dkt. #97 at 3.

In Washington, "trade secrets" are defined as "information . . . that: (a) [d]erives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value

1   from its disclosure or use; and (b) [i]s the subject of efforts that are reasonable under the

2   circumstances to maintain its secrecy." Woo v. Fireman's Fund Ins. Co., 137 Wn. App. 480,

3   487 (quoting RCW 19.108.010(4)).  The Court agrees with plaintiffs that HTC has not made a

4   sufficient showing of compelling reasons to justify sealing Exhibits C and D in their entirety.

5   However, to the extent the emails contain specific details regarding the design and operation of

6   the blades, the Court finds HTC has shown compelling reasons to justify limited redactions of

7   the emails.  The Court will permit refiling of Exhibits C and D with limited redactions of Mr.

8   Burdorf's specific statements and metrics regarding the proprietary design and suggested

9   modifications to the blade design.  General statements regarding FAA's and NTSB's

10  investigation into the Helicopter accident and requests that HTC consider their suggestions are

11  not trade secrets and shall remain unredacted.

12              **b.  Exhibit E: Partial Customer List**

13          HTC asks the Court to keep Exhibit E under seal on the grounds that it maintains the

14  secrecy of its customer list and derives value from that secrecy.  Dkt. #97 at 5 (citing Dkt. #98

15  (Burdorf Decl.) at ¶ 8).  Based on HTC's showings regarding the proprietary nature of the

16  customers listed in Exhibit E, the Court finds compelling reasons justify redaction of those

17  names. See, e.g., E. & J. Gallo Winery v. Instituut voor Landbouw-en Visserijonderzoek, No.

18  1:17-cv-00808-DAD-EPG, 2018 WL 4090585, at *3 (E.D. Cal. Aug. 27, 2018) ("[M]ultiple

19  courts have recognized that a customer list can constitute a trade secret, because 'its disclosure

20  would allow a competitor to direct its sales efforts to those customers who have already shown a

21  willingness to use a unique type of service or product as opposed to a list of people who only

22  might be interested[.]" (citation omitted)).  However, HTC's sole argument for keeping the

23  remaining information under seal is to prevent customer fear and/or reputational damage.  See

24  Dkt. #98 (Burdorf Decl.) at ¶ 8.  As explained above, these are not compelling justifications to

25  keep the entire document under seal.  See Markel, 2017 WL 10433991, at *6.  The Court will

26  permit refiling of Exhibit E with redactions of HTC's customer names only.

27

28

ORDER - 11

1

####    c.  Exhibit A: Revised SAC

2         HTC has offered no compelling reason to seal plaintiffs' revised SAC in its entirety.

3    However, to the extent the Court has permitted redactions of Exhibits C, D, and E, as described

4    above, the Court will permit very limited redaction of the revised SAC to the extent it directly

5    references redacted information in those three exhibits.

6         For the foregoing reasons, plaintiffs' pro forma motions for LCR 5(g) review (Dkts. #81,

7    #90) are GRANTED in part and DENIED in part.[9]  The parties are ordered to meet and confer

8    regarding limited redactions of Exhibits A, C, D, and E in accordance with this Order.  Redacted

9    versions of the exhibits, including plaintiffs' revised SAC, shall be filed within twenty-one (21)

10   days of the date of this Order.  The Clerk of Court is directed to unseal Exhibit B.  Dkt. #94 (Ex.

11   B).

12          **VI.    HTC'S MOTION TO STRIKE CEPUS DECLARATION (Dkt. #110)**

13          Finally, HTC has filed a motion to strike the Declaration of Elvis Cepus ("Cepus

14   Declaration") (Dkt. #109), which plaintiffs filed on April 10, 2020 in support of their motion to

15   compel.  See Dkt. #110.  Having considered the motion to strike and the remainder of the

16   record, the Court finds the Cepus Declaration unnecessary to its consideration of plaintiffs'

17   motion to compel.  The Court declines to rule on the merits of HTC's motion to strike (Dkt.

18   #110), but has not considered the Cepus Declaration in the disposition of this matter.[10]

19          **VII.   CONCLUSION**

20          For all the foregoing reasons, IT IS HEREBY ORDERED THAT,

21

22          [9] The Court would like to acknowledge that plaintiffs' arguments regarding HTC's improper

23   designation of documents and failure to comply with the requirements of LCR 5(g)(3) are well taken.
     Out of an abundance of caution, the Court will permit the documents in issue at this stage to be filed

24   with the limited redactions described above.  However, HTC is advised that a significant showing of
     compelling reasons will be required for documents filed in support of dispositive motions that it wishes

25   to keep under seal.

26
            [10] HTC also takes issue with plaintiffs' opposition to their motion to strike.  See Dkt. #113.  The

27   Court agrees with HTC that plaintiffs' opposition contains arguments that exceed the scope of the
     motion to strike.  The Court has not considered the additional arguments set forth on pages 2-8 of

28   plaintiffs' opposition.  See Dkt. #111.

ORDER - 12

1  (1)  HTC's "Motion to Dismiss" (Dkt. #60) is DENIED.

2  (2)  Plaintiffs' first and second "Joint Motions for Leave to File Second Amended

3 Complaint" (Dkts. #69, #101) are GRANTED.

4  (3)  Plaintiffs' "Motion to Compel Defendant [HTC] to Answer Interrogatories and

5 Produce Documents" (Dkt. #65) is GRANTED.  IT IS HEREBY ORDERED that HTC produce

6 documents responsive to plaintiffs' First Set of Requests for Production Nos. 1-4, 6-7, 9-11, 13-

7 19, and 21-41, and fully answer plaintiffs' First Set of Interrogatories Nos. 2-13 and 15-16

8 within twenty-one (21) days of the date of this Order.  Any claim of privilege shall be justified

9 in a privilege log served with the responses.  HTC shall specifically identify by Bates number

10 every document responsive to plaintiffs' requests for production to allow plaintiffs to determine

11 compliance with this Order.

12  (4)  Plaintiffs' first "Pro Forma Motion for LCR 5(g) Review of Documents

13 Designated Confidential by Defendant HTC" (Dkt. #81) is GRANTED in part and DENIED in

14 part.  Plaintiffs' second "Pro Forma Motion for LCR 5(g) Review of Documents Designated

15 Confidential by Defendant HTC" (Dkt. #90) is also GRANTED in part and DENIED in part.

16 The parties are ordered to meet and confer regarding limited redaction of Exhibits A, C, D, and

17 E in accordance with this Order.  Redacted versions of the exhibits, including plaintiffs' revised

18 SAC, shall be filed within twenty-one (21) days of the date of this Order.  The Clerk of Court is

19 directed to unseal Dkt. #94 (Ex. B).

20  (5)  The Court has not considered the Cepus Declaration in the disposition of this

21 matter and finds it unnecessary to rule on the merits of defendants' "Motion to Strike

22 Declaration of Elvis Cepus" (Dkt. #110).

23  IT IS SO ORDERED.

24  DATED this 30th day of October, 2020.

25

26

27        Robert S. Lasnik
         United States District Judge

28