UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| OLYMPIC AIR, INC.; CATLIN INSURANCE COMPANY, INC., <br><br> Plaintiffs, <br><br> v. <br><br> HELICOPTER TECHNOLOGY COMPANY, et al., <br><br> Defendants. | Case No. C17-1257-RSL <br><br> ORDER GRANTING MOTION TO STRIKE |
| WILLIAM G. REED and MARY E. REED, <br><br> Plaintiffs, <br><br> v. <br><br> HELICOPTER TECHNOLOGY COMPANY, et al., <br><br> Defendants. | |

This matter comes before the Court on plaintiffs' "Cross Motion to Strike NTSB Report (Dkt. 119-1) and Paragraphs 21, 25 of Gary Burdorf's Declaration (Dkt. 120); and to Disregard All Reliance in HTC's Motion for Summary Judgment (Dkt. 118) on the NTSB Report or Paragraphs 21, 25 of Gary Burdorf's Declaration." (Dkt. # 137). The motion was filed by the Reed plaintiffs and joined by plaintiffs Olympic Air, Inc. and Catlin Insurance Company, Inc.[1]

---

[1] On September 27, 2021, the Court granted the Reeds' motion to dismiss their claims with prejudice and entered judgment dismissing their claims because they had settled their claims against

ORDER GRANTING MOTION TO STRIKE - 1

See Dkts. # 137 at 2, # 140 at 2, # 151 at 2.  Having reviewed the submissions of the parties and the remainder of the record, the Court finds as follows:

This matter arises out of a helicopter crash that occurred when one of the helicopter's five rotor blades failed mid-flight.  On November 19, 2020, the Helicopter Technology Company defendants ("HTC") filed a motion for summary judgment (Dkt. # 118).  HTC also filed declarations providing evidence to support its motion for summary judgment.  Relevant to the motion at hand, HTC's evidence includes (i) a National Transportation Safety Board ("NTSB") Report regarding the helicopter crash, see generally Dkt. # 119-1, and (ii) the declaration of Dr. Gary Burdorf, president of HTC, which cites to the NTSB Report in paragraphs 21 and 25, see Dkt. # 120 at ¶¶ 21, 25.

Plaintiffs move the Court to strike the NTSB Report and, in turn, paragraphs 21 and 25 of Dr. Burdorf's report because there is a statutory prohibition on admitting any part of the NTSB Report into evidence or using it in civil litigation pertaining to the subject crash.  HTC contends that its use of the NTSB Report is proper because it does not cite to the "probable cause" portion of the NTSB Report.  Plaintiffs are correct, and HTC's arguments are not well taken.

The relevant statute states: "No part of a report of the Board, related to an accident or an investigation of an accident, may be admitted into evidence or used in a civil action for damages resulting from a matter mentioned in the report."  49 U.S.C. § 1154(b).  This statute is complemented by an implementing regulation, which states:

> Board accident report means the *report containing the Board's determinations, including the probable cause of an accident*, issued either as a narrative report or in a computer format ("briefs" of accidents). Pursuant to section 701(e) of the Federal Aviation Act of 1958 (FA Act), and section 304(c) of the Independent Safety Board Act of 1974 (49 U.S.C. 1154(b)) (Safety Act), *no part of a Board accident report may be admitted as evidence or used in any suit or action for damages growing out of any matter mentioned in such reports*.

---

their only remaining defendant, HTC.  See Dkts. # 157 (Order), # 158 (Judgment).  The Reeds were consequently terminated as parties to the case as of the same date.  However, because this motion was joined by remaining plaintiffs Olympic Air, Inc. and Catlin Insurance Company, Inc., the Court concludes that it is not moot.

ORDER GRANTING MOTION TO STRIKE - 2

>Factual accident report means the report containing the results of the investigator's investigation of the accident. The Board does not object to, and there is no statutory bar to, admission in litigation of factual accident reports. In the case of a major investigation, group chairman factual reports are factual accident reports.

49 C.F.R. § 835.2 (emphasis added).

The NTSB Report at issue contains the NTSB's probable cause determination regarding the helicopter crash that is the subject of this case. See Dkt. # 119-1 at 3. It is therefore a "Board accident report" as defined in the relevant regulation. This determination is bolstered by the fact that the "factual accident report" is separately linked on the NTSB's database website. See Dkts. # 150 at ¶¶ 6-7, # 150-4, # 150-5. It is even further bolstered by the fact that the NTSB Report bears a legend warning that 49 U.S.C. § 1154(b) "precludes the admission into evidence or use of any part of an NTSB report related to an incident or accident in a civil action for damages resulting from a matter mentioned in the report." Dkts. # 119-1 at 10, # 150-4 at 10. Because the NTSB Report is a "Board accident report" about the helicopter crash at issue, it therefore follows that "no part" of it may be admitted as evidence or used in the instant matter. See 49 U.S.C. § 1154(b); 49 C.F.R. § 835.2; accord Chiron Corp. & PerSeptive Biosystems v. Nat'l Transp. Safety Bd., 198 F.3d 935, 941 (D.C. Cir. 1999) ("Thus, the statute means what it says: No part of the Board's actual report is admissible as evidence in a civil suit.").

HTC asserts that its references to the NTSB Report are permissible because it relies on statements of fact rather than determinations of the NTSB.[2] The Court disagrees with HTC's

---

[2] HTC states that it relies on the following statements from the NTSB Report:
1. "Examination of the root fitting assembly revealed paint cracks along the root fitting/blade interfaces [i.e., the bond line], indicative of complete or partial disbondment of the root fittings."
2. "[T]he crack initiated at the disbondment of the root fittings, which was part of the inspection procedure."
3. "[I]ndications of root fitting disbondment, specifically paint cracking around the root fitting/blade interface [i.e., the bond line], occurred sufficiently early to have been detected if the inspections had been performed in accordance with the AD."

Dkt. # 147 at 3 (quoting Dkt. # 119-1 at 2-3).

ORDER GRANTING MOTION TO STRIKE - 3

assertion. Most troublesome is the statement that "indications of root fitting disbondment . . . occurred sufficiently early to have been detected if the inspections had been performed in accordance with the [airworthiness directive]." Dkt. # 147 at 3 (quoting Dkt. # 119-1 at 2-3). Given that the NTSB Report contains no indication that the NTSB inspected the helicopter blade between the time that the cracks first appeared and the crash, this is an educated opinion, not a fact.

Even assuming, *arguendo*, that HTC is correct that it relies only on statements of fact derived from the NTSB Report, it is inconsequential. The statute and the regulation prohibit using any part of the NTSB Report. Fact or not, these statements are derived from the NTSB Report. Their use is therefore prohibited.

Finally, HTC argues that the Court should not strike paragraphs 21 and 25 of Dr. Burdorf's declaration in full because they are stand-alone expert opinions that just happen to agree with and cite to the NTSB Report. Rather, HTC proposes that the Court merely strike the direct references to the NTSB Report. This argument is disingenuous. The Court does not doubt Dr. Burdorf's credentials, but these paragraphs clearly cite to the NTSB Report and draw from its conclusions. See, e.g., Dkt. # 120 at ¶ 21 ("As determined by the NTSB, had Mr. Reed performed the mandated inspection after he had flown the helicopter for 200 hundred torque events that day, then he would have seen the plainly evident cracks which required that the failed blade be scrapped and replaced before further flight." (citing Dkt. # 119-1 at 2-3)), ¶ 25 ("As determined by the NTSB, and as plainly depicted in the NTSB photograph in Figure 3 of its metallurgical report, the adhesive 'cracks,' the paint 'cracks' evidencing the adhesive 'cracks,' and the missing paint were plainly evident by at least the 200th torque event that occurred on the day of Mr. Reed's crash." (citing Dkt. # 119-1 at 3)).[3]

---

[3] For the avoidance of doubt, the Court does not suggest that the NTSB metallurgic report is the NTSB Report.

ORDER GRANTING MOTION TO STRIKE - 4

Case 2:17-cv-01257-RSL   Document 165   Filed 03/18/22   Page 5 of 5

For all of the foregoing reasons, IT IS HEREBY ORDERED that plaintiffs' Cross Motion to Strike (Dkt. # 137) is GRANTED. The Court hereby STRIKES:

1. The NTSB Report (Dkt. # 119-1); and
2. Paragraphs 21 and 25 of the Declaration of Dr. Burdorf (Dkt. # 120 at ¶¶ 21, 25).

DATED this 18th day of March, 2022.

*Robert S. Lasnik*
Robert S. Lasnik
United States District Judge

ORDER GRANTING MOTION TO STRIKE - 5