UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| OLYMPIC AIR, INC.; CATLIN INSURANCE COMPANY, INC.,<br><br>    Plaintiffs,<br><br>    v.<br><br>HELICOPTER TECHNOLOGY COMPANY, et al.,<br><br>    Defendants. | Case No. C17-1257-RSL<br><br>ORDER DENYING HTC'S MOTION FOR SUMMARY JUDGMENT |
| WILLIAM G. REED and MARY E. REED,<br><br>    Plaintiffs,<br><br>    v.<br><br>HELICOPTER TECHNOLOGY COMPANY, et al.,<br><br>    Defendants. | |

This matter comes before the Court on the Helicopter Technology Company defendants' "Motion for Summary Judgment Re Superseding Proximate Cause and Alleged Failure to Warn/Instruct" (Dkt. # 118).[1] The Court, having reviewed the memoranda, declarations, and exhibits submitted by the parties, finds as follows:

---

[1] Plaintiffs' response (Dkt. # 133) was filed by plaintiffs William G. Reed and Mary E. Reed, and joined by plaintiffs Olympic Air, Inc. and Catlin Insurance Company, Inc. (Dkt. # 139). On September 27, 2021, the Court granted the Reeds' motion to dismiss their claims with prejudice and

ORDER DENYING HTC'S MOTION FOR
SUMMARY JUDGMENT - 1

## I. Background

This matter arises out of a helicopter crash. These basic facts are undisputed: (1) the crash occurred when one of the helicopter's five main rotor blades failed mid-flight, (2) the Helicopter Technology Company defendants ("HTC") manufactured the failed blade and sold it to plaintiff Olympic Air, Inc. ("Olympic"), (3) former plaintiff William G. Reed was piloting the helicopter at the time of the crash, (4) the helicopter belonged to Olympic, and (5) plaintiff Catlin Insurance Company, Inc. ("Catlin") issued an insurance policy to Olympic that covered the crashed helicopter.

Plaintiffs bring claims against HTC under the Washington Product Liability Act based on alleged design defect and/or manufacturing defect and/or problem with the manufacturing processes of the failed blade, Dkt. # 125 at ¶7.4, and HTC's alleged failure to warn, id. at ¶7.5.

HTC moves the Court to enter summary judgment in its favor on the grounds that plaintiffs' design and manufacturing defect claims fail because the proximate or superseding cause of the accident was Mr. Reed's failure to conduct a blade inspection on the day of the crash, and plaintiffs' failure to warn claims fail because the blade inspection instructions were an adequate warning.

Before turning to the merits of HTC's motion for summary judgment, the Court considers evidentiary matters.

## II. Evidentiary Matters

There are four evidentiary matters that bear on this Order: (A) the Court's Order granting plaintiffs' motion to strike a National Transportation Safety Board ("NTSB") Report, (B) the admissibility of HTC's torque event spreadsheet, (C) the admissibility of plaintiffs' declaration

---

entered judgment dismissing their claims because they had settled their claims against their only remaining defendant, HTC. See Dkts. # 157 (Order), # 158 (Judgment). The Reeds were consequently terminated as parties to the case as of the same date. However, because their response was joined by remaining plaintiffs Olympic Air, Inc. and Catlin Insurance Company, Inc., the Court considers it and all related declarations here.

ORDER DENYING HTC'S MOTION FOR
SUMMARY JUDGMENT - 2

of Alexander Moffat, and (D) the admissibility of plaintiffs' evidence regarding changes that HTC made to the blade inspection instructions following the helicopter crash.

### A. NTSB Report

On March 18, 2022, the Court entered an Order (Dkt. # 165) striking HTC's filing of an NTSB Report regarding the helicopter crash (Dkt. # 119-1) and statements from the declaration of HTC's expert, Dr. Gary Burdorf, made in reliance on the NTSB Report (Dkt. # 120 at ¶¶ 21, 25). The Court entered the Order on the grounds that there is a statutory prohibition on admitting any part of the NTSB Report into evidence or using it in civil litigation pertaining to the subject crash. See Dkt. # 165. Accordingly, in ruling on the instant motion for summary judgment, the Court will not consider the NTSB Report, the statements from the declaration of Dr. Burdorf made in reliance on the NTSB Report, or any statements in the memoranda derived from the NTSB Report.

### B. Torque Event Spreadsheet

In support of the instant motion, HTC filed a spreadsheet purporting to show the number of torque events that the failed blade had accumulated prior to the helicopter crash (Dkt. # 120-5 at 2). Plaintiffs object to this torque event spreadsheet on the grounds that HTC filed it without any foundation, and it contains derived data. While plaintiffs are correct that HTC's initial filing was devoid of any indication of the origins or underpinnings of the torque event spreadsheet, HTC clarified in a declaration filed alongside its reply that an NTSB investigator prepared the torque events spreadsheet, and that it contains a compilation of the daily logbook entries and blade log cards to show the estimated torque events that the helicopter's blades accumulated prior to the crash. See Dkt. # 142.

At the summary judgment stage, the Court focuses not on the admissibility of the evidence's form, but on the admissibility of its contents. Sandoval v. Cty. of San Diego, 985 F.3d 657, 666 (9th Cir. 2021), cert. denied sub nom. San Diego Cty. v. Sandoval, 142 S. Ct. 711 (2021) (citing Fraser v. Goodale, 342 F.3d 1032, 1036 (9th Cir. 2003); Fed. R. Civ. P. 56(c)(2)). If the contents of a document can be presented in a form that would be admissible at trial, this is sufficient to consider it on summary judgment. Id.

ORDER DENYING HTC'S MOTION FOR
SUMMARY JUDGMENT - 3

HTC asserts that the torque event spreadsheet is a business record prepared by NTSB investigators as part of their investigation of the helicopter crash and is therefore admissible pursuant to Fed. R. Evid. 803(6). This Rule requires that certain pre-admission conditions are shown by the testimony of the custodian or another qualified witness or by a compliant certification. See Fed. R. Evid. 803(6)(D). HTC offers the torque event spreadsheet with only a declaration of counsel and attached emails to vouch for its origin and inputs. See Dkt. # 142. However, it is conceivable that this record could be made admissible at trial via proper testimony or certification. The Court will therefore consider the torque event spreadsheet.

### C. Moffat Declaration

In support of their objection to HTC's motion, plaintiffs filed a declaration of their expert, Mr. Moffat (Dkt. # 135). Mr. Moffat is an aircraft accident investigator. See Dkt. # 67 at Ex. 1 (Mr. Moffat's CV). HTC objects to the admissibility of Mr. Moffat's declaration on Daubert grounds.[2] HTC asserts that Mr. Moffat is not educationally qualified to render his opinion, that Mr. Moffat's opinion is not based upon any facts, and that Mr. Moffat's opinion is not demonstrated to be the product of reliable principles and methods, particularly as it lacks technical or metallurgical explanation. See Dkt. # 141 at 11-12.

HTC has already made similar objections to Mr. Moffat's declarations in the past, and the Court rejected these arguments. See Dkt. # 117 at 6 n.5. The Court sees no reason to change course at this stage. The Court echoes its earlier conclusion that Mr. Moffat is qualified because he has demonstrated a lengthy career in accident reconstruction. Id. (citing Dkt. #67 at ¶¶ 2-3,

---

[2] In Daubert v. Merrell Dow Pharm., Inc., 509 U.S. 579 (1993), the Supreme Court charged trial judges with the responsibility of acting as gatekeepers to prevent unreliable expert testimony from reaching the jury. To be admissible, expert testimony must be both reliable and helpful. The reliability of expert testimony is judged not on the substance of the opinions offered, but on the methods employed in developing those opinions. Daubert, 509 U.S. at 594-95. In general, the expert's opinion must be based on principles, techniques, or theories that are generally accepted in his or her profession and must reflect something more than subjective belief and/or unsupported speculation. Daubert, 509 U.S. at 590. The testimony must also be "helpful" in that it must go "beyond the common knowledge of the average layperson," U.S. v. Finley, 301 F.3d 1000, 1007 (9th Cir. 2002), and it must have a valid connection between the opinion offered and the issues of the case, Daubert, 509 U.S. at 591-92.

ORDER DENYING HTC'S MOTION FOR
SUMMARY JUDGMENT - 4

Ex. 1). The Court remains perplexed regarding HTC's argument that Mr. Moffat's opinion is not based on any facts. The Court previously pointed out the irony in HTC arguing that Mr. Moffat's opinion was not based on sufficient facts when HTC was withholding the evidence in question. Id. This observation is magnified by the Court's understanding that HTC continues to withhold this evidence, despite the Court's discovery order. See Dkts. # 122, # 135 at ¶ 3. The Court disagrees that Mr. Moffat's declaration lacks explanation. See generally Dkt. # 135. The Court will therefore consider Mr. Moffat's declaration.

### D. Inspection Instruction Changes

Among the evidence plaintiffs cite is the fact that *after* the crash, MD Helicopters and HTC revised their torque event inspection instructions to include checking for adhesive and paint cracking as signs of disbondment. Dkt. # 133 at 22. HTC argues that this evidence is not admissible under the Federal Rules of Evidence. Dkt. # 141 at 12. HTC is correct. "When measures are taken that would have made an earlier injury or harm less likely to occur, evidence of the subsequent measures is not admissible to prove: negligence; culpable conduct; a defect in a product or its design; or a need for a warning or instruction." Fed. R. Evid. 407. Plaintiffs offer the change in instruction for these prohibited purposes. The Court will therefore not consider plaintiffs' evidence and arguments regarding the change in instruction, including the items in Mr. Moffat's declaration premised on this change.

## III. Summary of Facts

Accounting for the evidentiary rulings discussed above, the Court summarizes the facts as follows:

On July 22, 2014, Mr. Reed was piloting an MDHI Model 369D helicopter, Registration No. N5225C, near Oso, Washington in the scope of his employment with Olympic. Dkts. # 76 at 1, # 136 at ¶ 2. Mr. Reed was conducting external load operations at a clear-cut logging site. Dkt. # 76 at 2.

One of the helicopter's five rotor blades, Part No. 500P2100-105, Serial No. SN091B, suffered a total failure and caused the helicopter to crash. Dkt. # 120 at ¶ 5. HTC manufactured the blade under a Parts Manufacturing Authority ("PMA") issued by the Federal Aviation

Administration ("FAA"). Id. at ¶ 4. HTC sold the blade to Olympic in October 2012 as one of a set of five blades. Id. at ¶ 5. A photo of the failed blade after the crash shows plainly evident paint cracks. See Dkts. # 76-9, # 135 at ¶ 10. The blade failed due to disbondment at the root fitting. Dkts. # 120 at ¶ 7, # 135 at ¶ 4. A second blade had also disbonded from the root fitting and was in the process of failing. Dkt. # 135 at ¶ 4. The other three blades, which were of the same age and had been subject to identical loads, torque events, and use, showed no evidence of disbondment at the root fitting. Id.

At the time of sale, the failed blade had a service life of 3,530 hours. Id. As of the crash, the failed blade had been in service for 1,123 hours. Id. As of the crash, the helicopter's main rotor blades had accumulated 213,254 torque events, including 260 torque events on the day of the crash. Dkt. # 120 at ¶¶ 20-21. The maintenance manual instructed the inspector to perform a torque event inspection at 13,720 torque events and again every subsequent 200 torque events. If a blade did not pass inspection, the manual instructed to discontinue further flight and remove the blade from service. Id. at ¶¶ 11, 13, 19, 23; Dkt. # 120-12 at 48.

At the time of the crash, Mr. Reed had over 38,000 hours of experience as a helicopter pilot, including approximately 27,000 hours flying MDHI Model 369D helicopters. Dkt. # 136 at ¶ 5. In 2013, Mr. Reed attended airframe and powerplant ("A&P") mechanics school and obtained his A&P license so that he could perform periodic torque event inspections of the main rotor blades of the MDHI 369D helicopter that he flew for Olympic. Id. at ¶ 6. Torque event inspections require two people. Id. at ¶ 7. Mr. Reed was severely injured in the crash and does not remember what occurred on-site that day. Id. at ¶ 10. However, Mr. Reed declared that he routinely conducted torque event inspections at the end of each workday or before the start of the next workday, that he would conduct torque event inspections during the course of the workday when Olympic personnel were available to assist in the inspections such that on a typical workday he would conduct three to four torque event inspections, and that he specifically recalled conducting a torque event inspection of the main rotor blades with the assistance of his wife on the evening before the crash. Id. at ¶ 7. Mr. Reed also told the NTSB that he typically did not conduct a torque event inspection until he went home at night. Dkt. # 76-2 at 2.

ORDER DENYING HTC'S MOTION FOR
SUMMARY JUDGMENT - 6

Plaintiffs have not submitted any evidence to show that Mr. Reed conducted a workday torque event inspection on the day of the crash.

Mr. Reed declared that while he was aware of the torque event inspection instructions prior to the accident:

> [I]t was [his] understanding the inspector was to inspect the blade for chordwise cracking in the blade and the root end for cracks in the blade not cracks in the bond line where the root fitting attaches to the blade. Specifically, [he] was unaware that a crack in the paint in the bond line between the root fitting and the blade was evidence on potential disbondment of the root fitting and blade and evidences a risk of imminent failure of the blade.

Dkt. # 136 at ¶ 12.

Plaintiffs' expert, Mr. Moffat, declared that in his opinion:

> [H]ad Mr. Reed followed HTC's [torque event] inspection procedures at any time on the day of the crash, he would not have detected any condition that would have required him to replace the main rotor blade under the applicable inspection criteria, or which would have otherwise alerted him to an impending rotor blade failure.

Id. at ¶ 6.

HTC's expert, Dr. Burdorf, emphasized that the inspection instructions required Mr. Reed to look for "cracks," and included a figure depicting "the underside of the inboard area of a main rotor blade" and utilizing "white arrows which directed the inspector to exactly where to look for cracks when inspecting the underside of a blade using a 10x magnifying glass." Dkt. # 120 at ¶¶ 16-17.  Dr. Burdorf further declared that the inspection, "if properly undertaken, will identify 'cracks' where the inspector is directed to inspect and thereby identify a potential blade failure regardless of whether the 'cracks' initiated as a result of a design flaw, a manufacturing defect, or overuse of the helicopter and its blades." Id. at ¶ 22.  This is because any design flaw or manufacturing error would "result in the movement of the blade in the upper and lower fittings," and "[s]uch movement of the blades in the fittings . . . is always manifested by 'cracks' in the adhesive, 'cracks' in the white paint overlying the adhesive, and/or peeled away paint."

ORDER DENYING HTC'S MOTION FOR
SUMMARY JUDGMENT - 7

1  Id. at ¶ 24.  In Dr. Burdorf's opinion, this is exactly what occurred.  Id.  Dr. Burdorf, however,
2  denied that there was any design flaw or manufacturing error.  Id.
3        Dr. Burdorf further declared that "HTC has sold over 17,000 main rotor blades world-
4  wide before and after Mr. Reed's crash," and neither Mr. Burdorf nor HTC is "aware of any
5  owner operator of helicopters on which HTC's 17,000 blades have been installed where an HTC
6  blade failed due to a failure of the owner operator to comply with the mandated torque event
7  inspections, other than Mr. Reed."  Id. at ¶ 27.  However, evidence shows that HTC was aware
8  of over 100 blades of the same type as the failed blade that were returned with adhesive failures
9  prior to the crash.  See Dkt. # 124-3.
10  **IV.   Summary Judgment**
11        Summary judgment is appropriate when, viewing the facts in the light most favorable to
12  the nonmoving party, there is no genuine issue of material fact that would preclude the entry of
13  judgment as a matter of law.  The party seeking summary dismissal of the case "bears the initial
14  responsibility of informing the district court of the basis for its motion," Celotex Corp. v.
15  Catrett, 477 U.S. 317, 323 (1986), and "citing to particular parts of materials in the record" that
16  show the absence of a genuine issue of material fact, Fed. R. Civ. P. 56(c).  Once the moving
17  party has satisfied its burden, it is entitled to summary judgment if the non-moving party fails to
18  designate "specific facts showing that there is a genuine issue for trial."  Celotex Corp., 477 U.S.
19  at 324.  The Court will "view the evidence in the light most favorable to the nonmoving party
20  . . . and draw all reasonable inferences in that party's favor."  Colony Cove Props., LLC v. City
21  of Carson, 888 F.3d 445, 450 (9th Cir. 2018).  Although the Court must reserve for the trier of
22  fact genuine issues regarding credibility, the weight of the evidence, and legitimate inferences,
23  the "mere existence of a scintilla of evidence in support of the non-moving party's position will
24  be insufficient" to avoid judgment.  City of Pomona v. SQM N. Am. Corp., 750 F.3d 1036, 1049
25  (9th Cir. 2014); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986).  Factual disputes
26  whose resolution would not affect the outcome of the suit are irrelevant to the consideration of a
27  motion for summary judgment.  S. Cal. Darts Ass'n v. Zaffina, 762 F.3d 921, 925 (9th Cir.
28  2014).  In other words, summary judgment should be granted where the nonmoving party fails

ORDER DENYING HTC'S MOTION FOR
SUMMARY JUDGMENT - 8

to offer evidence from which a reasonable fact finder could return a verdict in its favor. Singh v. Am. Honda Fin. Corp., 925 F.3d 1053, 1071 (9th Cir. 2019).

HTC moves the Court to grant summary judgment in its favor on plaintiffs' claims grounded in (A) design and/or manufacturing defect, and (B) failure to warn.

**A. Design and/or Manufacturing Defect**

HTC argues that it is entitled to summary judgment on plaintiffs' claims of design and/or manufacturing defect because the proximate or superseding cause of the crash was not any defect in the blade, but rather Mr. Reed's failure to complete a torque event inspection prior to the crash.

HTC's argument is premised on factual findings that (i) the helicopter blades had accumulated over 200 torque events on the day of the crash, and (ii) Mr. Reed failed to complete a torque event inspection on the day of the crash. Plaintiffs' expert, Mr. Moffat, emphasized that it is "not known or established that Mr. Reed actually flew the subject helicopter over 200 torque events on the date of the crash, or that, if he did, he did not conduct a [torque event] inspection at any point during that work day." Dkt. # 135 at ¶ 6.

As discussed above, the Court admits HTC's torque event spreadsheet. Therefore, in the absence of any contrary evidence from plaintiffs, the Court accepts the premise that the helicopter blades accumulated 260 torque events on the day of the crash. See Dkt. # 120-5 at 2. Pursuant to the instruction manual, the helicopter blades were therefore due for a torque event inspection 60 torque events prior to the crash.

However, the Court does not accept HTC's contention that it is established that Mr. Reed failed to complete a torque event inspection on the day of the crash. HTC's argument is circular. HTC asks the Court to conclude that Mr. Reed did not conduct a torque event inspection on the day of the crash because had he conducted a proper inspection, the crash would not have occurred. Due to his serious injuries, Mr. Reed does not remember if he conducted a torque event inspection that day. Dkt. # 136 at ¶ 10. While he declared that he would typically conduct multiple midday torque event inspections when possible, he also told the NTSB that he usually did not conduct such inspections until he returned home. Id. at ¶¶ 7,

ORDER DENYING HTC'S MOTION FOR
SUMMARY JUDGMENT - 9

10; Dkt. # 76-2 at 2. Neither plaintiffs nor HTC present any affirmative evidence of what Mr. Reed did that day, such as a declaration from another person present at the clear-cut site. Taking the evidence in the light most favorable to the nonmoving party, it is unknown whether Mr. Reed conducted a torque event inspection on the day of the crash. HTC's argument, which is premised on a factual finding that he did not, therefore fails.

Even if Mr. Reed did not complete a torque event inspection on the day of the crash, HTC would not be entitled to summary judgment on the ground that this failure to inspect was the proximate or superseding cause of the crash. "Proximate cause is an essential element of both negligence and product liability theories." Anderson v. Dreis & Krump Mfg. Corp., 48 Wn. App. 432, 441 (1987). "To show proximate causation, the plaintiff must show both cause in fact and legal causation." Ayers v. Johnson & Johnson Baby Prod. Co., 117 Wn.2d 747, 753 (1991) (citing Baughn v. Honda Motor Co., Ltd., 107 Wn.2d 127, 142 (1986)). "Cause in fact refers to the 'but for' consequences of an act—the physical connection between an act and an injury." Id. (citing Hartley v. State, 103 Wn.2d 768, 778 (1985)). Cause in fact is generally a question of fact reserved for the jury, but the court may determine it as a matter of law if "the facts are undisputed and the inferences therefrom are plain and incapable of reasonable doubt or difference of opinion." Baughn, 107 Wn.2d at 142. It is undisputed that the helicopter would not have crashed "but for" the catastrophic blade failure, and for the limited purpose of its motion for summary judgment, HTC concedes the blade was defective. Plaintiffs have therefore satisfied cause in fact.

On the other hand, "[l]egal causation depends on considerations of 'logic, common sense, justice, policy, and precedent.'" Ayers, 117 Wn.2d at 756 (quoting King v. Seattle, 84 Wn.2d 239, 250 (1974)). "It involves the 'determination of whether liability *should* attach as a matter of law given the existence of cause in fact.'" Id. (quoting Hartley, 103 Wn.2d at 779). Considered in isolation, the Court is persuaded that catastrophic blade failure leading to a helicopter crash satisfies legal causation.

HTC asks the Court to conclude that, as a matter of law, Mr. Reed's failure to conduct a torque event inspection in accordance with the instructions on the day of the crash was a

ORDER DENYING HTC'S MOTION FOR
SUMMARY JUDGMENT - 10

1  superseding cause that severed the chain of legal causation.[3]  "The doctrine of superseding cause
2  . . . limits the situations in which legal causation can be held to exist between two events."
3  Anderson, 48 Wn. App. at 442.  Not all acts are superseding causes – there may be multiple
4  proximate causes of an injury.  Riojas v. Grant Cty. Pub. Util. Dist., 117 Wn. App. 694, 699
5  (2003) (quoting Smith v. Acme Paving Co., 16 Wn. App. 389, 396 (1976)); cf. RCW Ch. 4.22
6  (Washington's comparative fault regime).  "Whether an act may be considered a superseding
7  cause sufficient to relieve a defendant of liability depends on whether the intervening act can
8  reasonably be foreseen by the defendant; only intervening acts which are not reasonably
9  foreseeable are deemed superseding causes."  Id. (quoting Anderson, 48 Wn. App. at 442).  "If
10 the acts are within the ambit of the hazards covered by the duty imposed upon the defendant,
11 they are foreseeable and do not supersede the defendant's" liability.  Id. (quoting Brashear v.
12 Puget Sound Power & Light Co., 33 Wn. App. 63, 69 (1982), rev'd on other grounds, 100 Wn.2d
13 204 (1983)) (internal punctuation omitted); see also Campbell v. ITE Imperial Corp., 107 Wn.2d
14 807, 814 (1987) (stating that negligence principles of superseding cause apply with equal force
15 in products liability actions).  "The foreseeability of an intervening act, unlike the determination
16 of legal cause in general, is ordinarily a question of fact for the jury," id. at 698 (quoting
17 Anderson, 48 Wn. App. at 443), but summary judgment may be appropriate if the trial court
18 concludes the defendant's liability was superseded as a matter of law, id. (citing Smith, 16 Wn.
19 App. at 396-97 (1976)).

20      Comparison to Baughn is instructive.  In that case, two eight-year-old children were
21 seriously injured while riding a minibike on a public roadway.  The minibike carried a
22 prominent warning that it was for off-the-road use only.  The children, distracted by other
23 children chasing them on another minibike, ran multiple stop signs on the public roadway before
24 colliding with a truck.  Baughn, 107 Wn.2d at 129-30.  The Supreme Court of Washington held
25 that "[w]here there are no design or manufacturing defects in the product, and where the

---

[3] To the extent that HTC argues that Mr. Reed's failure to conduct a torque event inspection was the sole proximate cause of the crash, the Court finds that this argument is precluded by HTC's concession of a defect for purposes of this motion as a means to circumvent discovery production.

ORDER DENYING HTC'S MOTION FOR
SUMMARY JUDGMENT - 11

warnings concerning its use are adequate, a manufacturer is not liable for an accident and resulting injuries." Id. at 132. In analyzing legal causation, the court explained, "Plaintiffs have simply not shown that there was 'something wrong' with the mini-trail bike or that the warnings were inadequate. Nor does anything indicate that the driver had trouble handling it." Id. at 147.

Here, plaintiffs allege, and HTC concedes for the purposes of its motion, that there *was* something wrong with the helicopter blade – it disbonded and suffered catastrophic failure less than a third of the way through its service life. The Washington Supreme Court's holding in Baughn does not extend to defective products. Even assuming that HTC is correct that Mr. Reed failed to conduct a torque event inspection on the day of the crash, the question of whether this failure constituted a superseding cause of the crash is properly left to the jury.

Taking the evidence in the light most favorable to plaintiffs, HTC is not entitled to summary judgment on the design and/or manufacturing defect claims.

### B. Failure to Warn

HTC argues that the Court should grant summary judgment on plaintiffs' failure to warn claims because HTC's warnings were adequate but unheeded. In a failure to warn claim "the trier of fact must balance the likelihood that the product would cause the harm complained of, and the seriousness of that harm, against the burden on the manufacturer of providing an adequate warning." Ayers, 117 Wn.2d at 765. The applicable statute provides in relevant part:

> (1) A product manufacturer is subject to liability to a claimant if the claimant's harm was proximately caused by the negligence of the manufacturer in that the product was . . . not reasonably safe because adequate warnings or instructions were not provided.
> 
> . . .
> 
> (b) A product is not reasonably safe because adequate warnings or instructions were not provided with the product, if, at the time of manufacture, the likelihood that the product would cause the claimant's harm or similar harms, and the seriousness of those harms, rendered the warnings or instructions of the manufacturer inadequate and the manufacturer could have provided the warnings or instructions which the claimant alleges would have been adequate.

ORDER DENYING HTC'S MOTION FOR
SUMMARY JUDGMENT - 12

> (c) A product is not reasonably safe because adequate warnings or instructions were not provided after the product was manufactured where a manufacturer learned or where a reasonably prudent manufacturer should have learned about a danger connected with the product after it was manufactured. In such a case, the manufacturer is under a duty to act with regard to issuing warnings or instructions concerning the danger in the manner that a reasonably prudent manufacturer would act in the same or similar circumstances. This duty is satisfied if the manufacturer exercises reasonable care to inform product users.

RCW §§ 7.72.030(1)(b)-(c).

The Court agrees with plaintiffs that HTC is not entitled to summary judgment on claims where it has withheld relevant discovery. Plaintiffs' expert, Mr. Moffat, declared that despite HTC's concession that the blade was defective for purposes of its motion, "discovery is still needed to understand the full nature and magnitude of the defect and how it manifests. This information is essential to a full and proper analysis of the adequacy of any defective product's warnings/instructions, including HTC's warnings/instructions." Dkt. # 135 at ¶ 29. It is inconsequential that HTC generally concedes defects for purposes of its motion, as this general concession does not facilitate the balancing of the nature of the product to the warning as required under Washington law.

Even without considering the nature of the product, there is a material dispute regarding whether the instructions adequately guided Mr. Reed to look for the sorts of cracks indicative of the disbondment that occurred. This issue requires expert testimony – the Court is in no position to look at a photo of the blade taken after the crash and determine if a pre-crash inspection would have identified concerns. In plaintiffs' expert's opinion, "had Mr. Reed followed HTC's [torque event] inspection procedures at any time on the day of the crash, he would not have detected any condition that would have required him to replace the main rotor blade under the applicable inspection criteria, or which would have otherwise alerted him to an impending rotor blade failure." Dkt. # 135 at ¶ 6. The Court struck HTC's expert's conclusion on this subject because it impermissibly relied on the NTSB Report, see Dkt. # 165, but Dr. Burdorf generally highlighted that the instructions guided Mr. Reed to look for "cracks" of the sort that would

have appeared prior to the crash.  See # 120 at ¶¶ 16-17, 22, 24.  Mr. Reed stated that that he did not understand the instructions to encompass the kind of cracks at issue.  Dkts. # 76-2 at 3, # 136 at ¶ 12.  HTC asks the Court to conclude that Mr. Reed's statements evidence that the instructions were sufficient, but that Mr. Reed misunderstood them and therefore failed to conduct a proper inspection.  However, taking this evidence in the light most favorable to Mr. Reed, it supports a finding that the instructions were insufficient.

Taking the evidence in the light most favorable to the non-moving party, HTC is not entitled to summary judgment on the failure to warn claims.

## V. Conclusion

For all of the foregoing reasons, IT IS HEREBY ORDERED that HTC's Motion for Summary Judgment Re Superseding Proximate Cause and Alleged Failure to Warn/Instruct (Dkt. # 118) is DENIED.

DATED this 7th day of October, 2022.

*Robert S. Lasnik*
Robert S. Lasnik
United States District Judge